UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW S. MOLINA, CDCR #BI-9892,<br><br>                              Plaintiff,<br><br>vs.<br><br>DR. VU DINH,<br><br>                              Defendant. | Case No.:  21cv1593-BTM (RBB)<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DIRECTING US MARSHAL TO EFFECT SERVICE OF COMPLAINT** |

Plaintiff Andrew S. Molina, incarcerated at Calipatria State Prison ("Calipatria") in Calipatria, California, is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  Plaintiff claims a violation of his Eighth Amendment right to be free from cruel and unusual punishment was violated when Defendant Dr. Vu Dinh, a surgeon employed by Calipatria, was deliberately indifferent to his serous medical needs.  (*Id*. at 2-3.)  He alleges Dr. Dinh determined that the only treatment option for a medical condition causing Plaintiff great pain was to surgically remove and replace a hernia mesh, but moments before surgery was to begin Dr. Dinh refused to perform the surgery which Plaintiff has been unable to reschedule.  (*Id*. at 5-7.)

1

Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) at the time of filing and has instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.)

## I.  Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to prepay the entire fee only if leave to proceed IFP is granted pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1) & (4). The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2). Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed. *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Plaintiff's prison certificate shows he had an average monthly balance of $53.11 and average monthly deposits of $52.57 for the 6-months preceding the filing of this action,

---

[1] In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

and an available balance of $0.09.  (ECF No. 2 at 4.)  The Court **GRANTS** Plaintiff's Motion to Proceed IFP and declines to impose an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1) because his prison certificate indicates he may have "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.")  Instead, the Court directs the Secretary of the CDCR, or her designee, to collect the entire $350 balance of the filing fee required by 28 U.S.C. § 1914 and to forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II.     Screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

### A.     Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

 "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the

context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

B. **Plaintiff's Allegations**

Plaintiff alleges that when he arrived at Calipatria in 2019 he began seeking to have a surgical procedure, the removal and replacement of a hernia mesh. (ECF No. 1 at 5.) He claims the mesh needs replacement because it is causing him "great pain and discomfort." (*Id*.) He went through a year-long "rigorous process" of being approved for surgery, which included "x-rays, sonograms and cat scans." (*Id*.) Plaintiff names Dr. Dinh, a surgeon employed by Calipatria, as the sole Defendant and alleges that: "I met with Dr. Dinh on two separate occasions. On the last he finally cleared me and agreed to perform the surgery

since he seen no other option to fix my problem other than the procedure." (*Id*.)  Plaintiff alleges that on April 29, 2021:

> I went thru the whole process of fasting, being transferred to the hospital, getting prepped, shaved and attached to an I.V. just so at the very last minute Dr. Dinh . . . just change[d] his mind and refuse[d] to do the surgery.  His reasoning was that the risks far outweighed the benefits but honestly every thing was fine until the nurse came in with the disclosure agreement which didn[']t match the procedure I was having done.  Dr. Dinh wanted to simply remove the mesh without replacing it.  But once I expressed to him that I would like him to just perform the procedure we had both previously aggreed [sic] and provide me with the correct consent forms[,] that[']s when he got upset and became extremely aggressive and argumentative.  It was almost like he was trying to intimidate me into refusing the procedure.  He kept arguing with me about the mesh that was used, and that now he believed there was nothing wrong with it.  When I refused to budge and I expressed to him that I most definitely wanted to go thru with the procedure he got even more upset and walked away from me.  A few hours later he returned to inform me that he would not perform the surgery because he now (at that moment) insisted upon having the records from the original hernia surgery.  So when I asked him why he didn't have the records before approving my surgery?? He responded to me "I don't want to do the surgery and you can[']t make me."  I still not wanting to leave without having the procedure done insisted on speaking to someone in charge so they could explain to me what happened?? That[']s when I was offered to a "Dr. Tera Mitchel."  She informed me that the procedure would absolutely not be done because Dr. Dinh was the only surgeon she had on call for the prison [and] he was on his own authority refusing to do the surgery.  When I asked Dr. Mitchel what had changed that would merit [sic] this denial from the date of my appt. approval by Dr. Dinh till now (the day of the surgery)??  And she said "he simply changed his mind."  Later I found out from one of the cops at the prison that on 4/29/21 the day of the surgery that Dr. Dinh had four other surgery[s] scheduled along with mine.  On one of them he had complications and also didn[']t anticipate on replacing my mesh, which would further complicate his workload.  Also upon being sent back from my surgery appointment, I've put in numerous medical request slips to no avail.  I've also filed several 602 medical grievances to the highest level, that all have been rejected from headquarters in Sacramento.  I've even gone as far as filing a staff complaint against Dr. Dinh that has basically gone ignored.

(*Id*. at 5-7.)

Plaintiff seeks $150,000 in punitive damages as well as "some type of process to be in place that prevents Dr's or surgeons from denying surgeries that they themselves had preapproved for no good reason." (*Id*. at 8.)

### C. Analysis

Prisoner medical care may amount to cruel and unusual punishment in violation of the Eighth Amendment when medical professionals are "deliberately indifferent" to an inmate's "serious" medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014), quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.,* quoting *Wilson*, 501 U.S. at 302-03.  A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

With respect to the serious medical need prong of an Eighth Amendment claim, the allegations in the Complaint regarding the need for removal and replacement of Plaintiff's hernia mesh, which he alleges Dr. Dinh agreed is the only treatment option for a medical condition which is causing Plaintiff "great pain and discomfort," are sufficient to survive the "low threshold" of the screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or

treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.")

The deliberate indifference prong of an Eighth Amendment violation "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff alleges Dr. Dinh refused to proceed with the surgery they had agreed upon, removal and replacement of the hernia mesh, because Dr. Dinh: (1) was only prepared to remove the mesh despite previously agreeing to remove and replace it, (2) changed his mind that the mesh needed to be removed and failed to obtain the medical records of the original surgery, (3) was pressed for time that day due to complications from another surgery and having other surgeries scheduled, and (4) was the only prison surgeon available. Allegations of inadequate medical treatment, medical malpractice, or even gross negligence by themselves do not rise to the level of an Eighth Amendment violation. *See id.* ("[A]n 'inadvertent (or negligent) failure to provide adequate medical care' alone does not state a claim under § 1983), quoting *Estelle*, 429 U.S. at 105 (inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim); *Colwell*, 763 F.3d at 1068 ("A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference.") In fact, had Dr. Dinh gone forward with the surgery as demanded by Plaintiff to remove and replace the mesh under the conditions alleged in the Complaint, namely, that Dr. Dinh explained to Plaintiff that "the risks far outweigh the benefits" of proceeding with the surgery (ECF No. 1 at 5), and that Dr. Dinh "kept arguing with me about the mesh that was used, and that now he believed there was nothing wrong with it" (*id.* at 6), it may well have constituted deliberate indifference to Plaintiff's serious medical needs by performing surgery he was unprepared to perform or deemed medically unnecessary. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (deliberate indifference can be shown where the chosen course of medical treatment was "medically

unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health.")

Nevertheless, Plaintiff has plausibly alleged an ongoing delay in receiving necessary medical treatment. *See Bannister,* 763 F.3d at 1066 ("Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'"), quoting *Estelle*, 429 U.S. at 104. However, "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference" as the delay must be "harmful." *Shapley v. Nevada Bd. of State Prison Com'rs*, 766 F.2d 404, 407 (9th Cir. 1985), citing *Estelle*, 429 U.S. at 106. To state an Eighth Amendment claim based on the delay Plaintiff must plausibly allege Dr. Dinh was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" by delaying surgery, and that Dr. Dinh "drew that inference." *Farmer*, 511 U.S. at 837; *see also Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (a defendant must purposefully ignore or fail to respond to pain or medical needs and the delay must have "caused substantial harm.")

The Complaint alleges Plaintiff was approved for surgery after a year-long process involving "tests and medical treatments such as x-rays, sonograms, and cat scans" which led Dr. Dinh to conclude that removal and replacement of the hernia mesh was the only "option to fix [Plaintiff's] problem" (ECF No. 1 at 5), but Dr. Dinh cancelled the surgery moments before it was to begin after a dispute regarding consent, stating that he "now believed there was nothing wrong with" the mesh and needed the original hernia surgery records, despite Plaintiff later learning he was overextended with surgeries that day. (*Id*. at 6.) Those allegations, which suggests surgery was cancelled on a pretext, coupled with the allegation that "upon being sent back from my surgery appointment, I've put in numerous medical request slips to no avail" and that his staff complaint against Dr. Dinh has "gone ignored" (*id*. at 7), which suggests he is not scheduled for surgery, and assuming he remains in "great pain and discomfort," plausibly allege Plaintiff is being denied medically necessary surgery. *See Wilhelm*, 680 F.3d at 1122 (allegation doctor repeatedly

diagnosed inmate with a hernia and repeatedly concluded surgery was necessary but failed to refer prisoner for surgery for over a year and delayed surgery by failing to properly request the referral and then inexplicably cancelling the referral, survived "low threshold" for screening, as inmate plausibly alleged the surgical delay was based on deliberate indifference in implementing the prescribed treatment rather than a negligent misdiagnosis or difference of medical opinion). The Court finds the Complaint contains "sufficient factual matter, accepted as true," to survive the "low threshold" set for sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Id.* at 1123; *Iqbal*, 556 U.S. at 678.

Plaintiff is entitled to have the U.S. Marshal effect service of the summons and his Complaint on his behalf against Defendant Dr. Dinh, the only Defendant named in the Complaint. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.") However, the sua sponte screening process is "cumulative of, not a substitute for, any subsequent [motion to dismiss] that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007).

**III. Conclusion and Orders**

For all the reasons discussed, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.)

2. **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's trust account the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). All payments should be clearly identified by the name and number assigned to his action.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4.  **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon the named Defendant as directed by Plaintiff on the USM Form 285s provided to him and to promptly file proof of service, or proof of any attempt at service left unexecuted with the Clerk of the Court. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

5.  **ORDERS** Defendant, once he has been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," the defendant is required to respond).

6.  **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendant, or, if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendant or his counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon Defendants may be disregarded.

**IT IS SO ORDERED.**

Dated: October 18, 2021

_Barry Ted Moskowitz_
Hon. Barry Ted Moskowitz
United States District Judge